OPINION OF THE COURT
Gloria Goldstein, J.

m

The plaintiff herein was expelled from the defendant American Academy of Dramatic Arts (hereinafter referred to as the "Academy”) after 5 weeks of a 28-week course. He now seeks to recover the money he paid for tuition and fees in this small claims action.
The primary question presented is whether a private school may retain all tuition payments of a student who was expelled by the said school prior to the completion of the student’s course. The answer, it would appear, rests upon whether the expulsion was justified. (See Kabus v Seftner, 34 Misc 538; *1112 Starr v Liftchild, 40 Barb 541; Miami Military Inst, v Leff, 129 Misc 481.)
After trial by court, the following facts were determined. Plaintiff paid the Academy the sum of $35 for his application and $375* toward his tuition of $2,050 pursuant to an enrollment agreement whereby he would attend a 28-week course at the Academy. The essential pertinent parts of the enrollment agreement are as follows:
"It is clearly understood that upon registration the student assumes full responsibility for the entire tuition. This agreement does not lapse, nor is tuition waived, should the student leave the Academy for any reason before the end of the year, except as described under the heading 'Tuition Refund Procedure’.” * * *
"tuition refund procedures”
"In addition to the procedure for refunding deposit in the event of early withdrawal during any academic term, tuition charges shall be refunded in accordance with the following schedule: [depending on when the application for withdrawal (in writing) is received].
"The Academy reserves the right to dismiss any student who fails to meet its professional standards, including personal conduct, or who fails to comply with the Rules and Regulations of the Academy. Such determination shall be made solely at the discretion of the Academy”.
Although the agreement gives the Academy the right to dismiss any student who fails to meet its professional standards or fails to comply with its rules, the agreement is silent as to any refund in the event of dismissal. The tuition refund procedures in the event of early withdrawal do not ^apply since plaintiff did not withdraw, but rather was expelled. Also inapplicable is the provision that the "agreement does not lapse, nor is tuition waived, should the student leave the Academy for any reason”. Webster’s New World Dictionary, School and Office Edition, defines "leave” as: "to go away from. * * * to abandon.” This court finds that "leave” con *1113 notes a voluntary departure and does not, as evidenced by the facts in our case sub judice, include expulsion.
Moreover, to the extent that the enrollment agreement would allow the Academy to dismiss a student without legal justification and also retain his payments, this court finds such agreement unconscionable in the substantive sense in light of the agreement’s one-sidedness, the absolute discretion it purports to give the Academy, and the fact that a hearing was not necessary prior to dismissal. (See Nu Dimensions Figure Salons v Becerra, 73 Misc 2d 140.)
Although the contract does not expressly provide that the Academy may retain tuition payments after dismissal, the Academy would still be able to do so if the dismissal were made for just cause. (See Kabus v Seftner, 34 Misc 538, supra; Starr v Liftchild, 40 Barb 541, supra; Miami Military Inst, v Leff, 129 Misc 481, supra.)
Implied in contracts between a school and its students is a condition "that the student will not be guilty of such misconduct as would be subversive of the discipline of the college or school” (Goldstein v New York Univ., 76 App Div 80, 83). The Academy claimed that Mr. King was too much of an "exhibitionist”. Based upon the evidence presented at trial, it is the finding of this court that the plaintiff was not guilty of any substantive misconduct and that the dismissal was without just cause. Overacting even in a school of dramatic arts, may be immature and distasteful, but it is neither so offensive nor so unexpected as to warrant a double penalty of expulsion and forfeiture. Since the Academy did not have just cause for his dismissal, the Academy is not entitled to retain his tuition payments. (See Kabus v Seftner, supra; Starr v Liftchild, supra; Miami Military Inst. v Leff, supra.)
In making this determination, this court has carefully considered an apparent court policy towards private schools. The case law in this area evinces a general reluctance by courts to interfere with the internal affairs of private schools. This reluctance is best demonstrated in a 1928 case in which the Appellate Division of the Fourth Department upheld an expulsion and refused to reinstate a female student who had been expelled because the school "did not think her 'a typical Syracuse girl’ ” and did not condone her lifestyle. (Anthony v Syracuse Univ., 224 App Div 487, 489.) That court held that a rule of the university reserving the right to dismiss students at any time and for any reason whatever, was valid. However, *1114 a distinction must be drawn between those situations whereby reinstatement is sought, as in Anthony (supra), and those instances where the total relief sought is the refund of prepaid tuition. For in those latter instances, there is only a token or nominal interference with the internal affairs of a school. In the instant action, this court is involved not with the internal affairs between a school and a student but rather with the external affairs between a school and an exstudent and then only insofar as it affects the return of his tuition payments.
It is well established that contracts for instruction at a private school have been held to be entire and not divisible, so that tuition is usually not apportioned. (See Kabus v Seftner, supra; Starr v Liftchild, supra; Miami Military Inst. v Leff, supra; Drueker v New York Univ., 59 Misc 2d 789.)
This view, however, should not be applied in every instance for to do so could frequently lead to an inequitable result, with one party overcompensating for the other’s damages. The determination to prorate or not would best be made on a case-by-case basis, depending upon the facts of each particular case. Based upon the facts of this case, this court will not apportion tuition. The lessons were not discrete and the major part of the course yet remained to be completed due to the unjustified expulsion of the plaintiff by the Academy. If this court were to prorate the tuition, we would in effect be requiring the plaintiff to purchase a small fraction of a course which plaintiff has not, and never would have, agreed to purchase.
The application fee, however, is earned upon processing the application and is therefore not refundable.
Judgment is accordingly rendered for plaintiff in the sum of $375 with interest and disbursements.

 The "Academy” is also in receipt of $900 in Tuition Assistance Program (TAP) funds. This court makes no determination with respect to these funds since plaintiff did not make any claim therefor, and New York State is not a party to this proceeding.